IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-01576-RBJ

BRITTANY BROWN,

    Plaintiff,

v.

PREMIER ROOFING, LLC and
BEN MCFERRON,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' motion to dismiss plaintiff's first claim for relief [ECF No. 12]. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the reasons discussed below, the motion is granted.

## FACTS

This matter arises out of plaintiff Brittany Brown's claim that she was wrongfully terminated in violation of public policy. ECF No. 1 at ¶ 1. Brown lives in Colorado Springs, Colorado, and she formerly worked for defendant Premier Roofing, LLC (Premier). *Id.* at ¶ 3. Premier is a roofing company with offices in Colorado Springs and Denver. *Id.* at ¶¶ 5, 17. Defendant Ben McFerron is the principal owner and operator of Premier. *Id.* at ¶ 4.

Brown began working as a "Branch Administration and Production Assistant" in September 2013. *Id.* at ¶ 18. In that capacity, she provided "secretarial support to the branch

office manager and the office sales team." *Id.* at ¶ 19. Her primary responsibility was "general office work," including answering the phones, filing documents, and making appointments. *Id.* at ¶ 20. She attests that she was an "exemplary employee." *Id.* at ¶ 21. Premier recognized Brown as "employee of the month" three times—in November 2013 and July and August 2014. *Id.* at ¶ 22.

At the beginning of her tenure at Premier, Brown "enjoyed a good working relationship with her supervisor, Josh Vanderhoof." *Id.* at ¶ 28. However, in spring 2014 that relationship changed. *Id.* at ¶ 29. Vanderhoof began to treat Brown poorly, and his actions "became increasingly hostile and abusive." *Id.* He would "regularly yell and scream at [her] and berate her in response to her questions." *Id.* In one specific instance, Vanderhoof "stormed out of his office and yelled and screamed at [] Brown. His tirade ended with him yelling in her face that she needed to learn her place, and that someone needed to put her in her place." *Id.* On other occasions, Vanderhoof treated Brown in an "angry and hostile" manner over "minor issues" like ordering office supplies and "asking questions about completing paperwork." *Id.* at ¶ 31. Brown explains that Vanderhoof's "consumption of alcohol during the workday" caused him to treat her this way. *Id.* at ¶ 32.

On September 8, 2014 Brown emailed two Premier managers—Dan Reddy and Eric Brown (no relation to plaintiff)—with her concerns about Vanderhoof's "behavior and illegal activity" and his inappropriate treatment of her. *Id.* at ¶¶ 33–34. Specifically, Brown noted in her email that Vanderhoof was "regularly drinking alcohol during the workday and then driving company vehicles while under the influence of alcohol." *Id.* She also described that Vanderhoof "would smoke marijuana during the workday and remain at work or drive company vehicles

while under the influence of marijuana." *Id.* One week later, Premier fired Brown. *Id.* at ¶ 35. The day before Premier terminated her, it had named Brown employee of the month for August 2014. *Id.* at ¶ 36.

Brown filed this suit on July 24, 2015. In addition to her claim for wrongful discharge, she brings a claim for unpaid wages and overtime pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq. Id.* at ¶ 1. Defendants moved to dismiss Brown's first claim for wrongful discharge on August 26, 2015. ECF No. 12.

## DISCUSSION

### I. Standard of Review.

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, she has met the threshold pleading standard. *See, e.g., Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Importantly, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted); *accord Robbins v. Okla. ex. rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). "The

court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999) (internal citation omitted).

## II.   Wrongful Termination in Violation of Public Policy.

Brown alleges that she was wrongfully terminated in violation of public policy. ECF No. 1 at ¶ 42. She claims that "Premier terminated [her] employment in retaliation for [her] report of Mr. Vanderhoof's illegal behavior." *Id.* at ¶ 43. Defendants argue that these allegations fail to state a claim for wrongful termination in violation of public policy. ECF No. 12 at 2.

In Colorado, "an employee who is hired for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Crawford Rehabilitation Services Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997). Brown was an at-will employee. However, in *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 104–105 (Colo. 1992), the Colorado Supreme Court recognized a public policy exception to the general at-will presumption. Under this limited exception, an employee will have a cognizable claim for wrongful termination "if the discharge of the employee contravenes a clear mandate of public policy." *Id.* at 107 (internal quotations and citations omitted). An employee may state a claim for termination in violation of public policy by alleging that she was employed by the defendant, the defendant fired her, and the defendant discharged her "(1) in retaliation for exercising a job-related right or performing a specific statutory duty, or (2) that the termination would undermine a clearly expressed public policy." *Underwood v. GEO Group, Inc.*, No. 10-cv-306-LTB-KLM,

2011 WL 5593150, at *15 (D. Colo. 2011) (unpublished) (quoting *Kearl v. Portage Environmental, Inc.* 205 P.3d 496, 499 (Colo.App.2008)) (numbers added).

Regarding the second category, if an employer fires an employee for "engaging in conduct that is protected or encouraged as a matter of public policy," that employee may have a viable cause of action. *Mullin v. Hyatt Residential Group, Inc.*, 82 F.Supp.3d 1248, 1252 (D. Colo. 2015) (internal citation omitted). The "termination of an employee for 'whistle blowing' activity" can establish a wrongful discharge claim if the whistleblowing relates to conduct that is a public policy concern. *Haynes v. Poudre Valley Health Care, Inc.*, 2011 WL 1225590, at *4 (D. Colo. 2011) (unpublished) (internal citations omitted). One of the aims of "the public policy exception in these instances is to ensure that in order to keep his or her job, an employee is not required to forsake an important public duty (such as whistle-blowing)[.]" *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 667 n.2 (Colo. 1999).

The question of whether there is a "sufficiently clear expression of public policy" is an issue of law for the Court. *Kearl*, 205 P.3d at 498 (internal citation omitted). Courts often start by looking for statutory support. *See Flores v. American Pharmaceutical Services, Inc.*, 994 P.2d 455, 458 (Colo. App. 1999) ("[s]tatutes by their nature are the most reasonable and common sources for defining public policy."). But other sources, like a professional code of conduct, can state a public policy. *Rocky Mountain Hosp. and Medical Service v. Mariani*, 916 P.2d 519, 523 (Colo. 1996) (holding that "the Colorado State Board of Accountancy Rules and Regulations may constitute public policy for purposes of establishing a wrongful discharge claim in violation of public policy."). "Any public policy must serve the public interest and be sufficiently concrete to notify employers and employees of the behavior it requires. Therefore,

the provision must provide a clear mandate to act or not to act in a particular way." *Flores*, 994 P.2d at 458.  Additionally, a plaintiff must "allege that the public policy invoked truly impacts the public in order to justify interference into an employer's business decisions." *Kearl*, 205 P.3d at 499 (internal quotations and citations omitted).

It is undisputed that Brown worked for defendants, and that defendants fired her in September 2014.  *Id.* at ¶ 35.  The questions before this Court are whether there are clearly expressed public policies to support her claims, and if so, whether Brown's factual allegations sufficiently state a claim that her termination would "undermine" such policies.  Brown's theory about the existence of a public policy basis for her claim is that "the state and federal governments have an important interest in preventing individuals from working *or* operating motor vehicles while under the influence . . . or impaired by alcohol or drugs."  ECF No. 1 at ¶ 14 (emphasis added).

First, regarding a public policy against driving under the influence, Brown references a state criminal statute, which makes it a misdemeanor to "drive under the influence" or while "ability impaired" due to the consumption of alcohol, drugs, or both.[1]  C.R.S. §§ 42–4–1301(1)(a)–(b).  Brown further asserts that "operating a motor vehicle while under the influence of, or impaired by, alcohol or marijuana is a matter of state and national concern."  ECF No. 1 at ¶ 10.  While the Court recognizes that it "is beyond debate that drunken driving is a serious problem, and that the state has a substantial interest in preventing the loss of life and damage to

---

[1] In her Complaint, Brown identifies two other statutory sources to support her termination for reporting that Vanderhoof was driving under the influence—a federal transportation bill and Colorado's statutory duty to report a suspected crime.  ECF No. 1 at ¶¶ 12, 15.  Defendants argue that these statutes do not provide a "sufficiently clear mandate of public policy" relevant to this case.  ECF No. 12 at 8–9.  Because I assume that the Colorado state courts might find a sufficient public policy basis in § 42–4–1301, I need not consider whether these other statutes would provide a foundation for Brown's wrongful termination claim.

property caused by drunk drivers," *People v. Rister*, 803 P.2d 483, 487 (Colo. 1990), the Colorado state courts have not considered a wrongful discharge claim involving drinking and driving.

However, even if the Court assumes, without deciding, that § 42–4–1301 constitutes a "sufficiently clear mandate of public policy to sustain a wrongful discharge cause of action," *Rocky Mountain Hospital and Medical Service v. Mariani*, 916 P.2d 519, 526 (Colo. 1996), Brown's factual allegations regarding Vanderhoof's driving under the influence are insufficient. Her only direct references to Vanderhoof's driving are found in her description of the email she sent to her managers. She wrote that Vanderhoof was "regularly drinking alcohol during the workday and then driving company vehicles while under the influence of alcohol." ECF No. 1 at ¶ 34. Brown also attests that she informed her managers that Vanderhoof "would smoke marijuana during the workday and remain at work or drive company vehicles while under the influence of marijuana." *Id.* She does not provide any additional details to support the conclusory allegations contained in her emails. For example, she does not allege that she observed Vanderhoof displaying any indicia of inebriation—like bloodshot eyes, odor of alcohol on his breath, unsteady walking, or slurred speech—that police look for during roadside sobriety tests. She does not describe any specific instances in which Vanderhoof seemed to be under the influence of marijuana when he was operating a company vehicle. Finally, she has not alleged that she observed Vanderhoof driving in a reckless manner. [2]

---

[2] Before moving on, the Court will address defendants' claim that Brown's "allegation of criminal conduct ought to raise the bar on her pleading." ECF No. 12 at 7. No "heightened" pleading requirement applies to Brown's claim. Where a claim for wrongful termination in violation of public policy is based on employee whistleblowing, the employee need not establish that the law breaking conclusively occurred. But Brown's allegations still do not satisfy the requirements of the traditional pleading standard

Second, Brown claims that there is a "body of public policy" that protects employees from being fired for reporting that a coworker has been working under the influence of drugs or alcohol. *Id.* at ¶ 16. In support of her claim, Brown cites to Colorado's workers' compensation laws where "on-the-job-use of alcohol or drugs . . . can result" in a substantial reduction of benefits to an injured employee. *Id.* at ¶ 13. The Colorado state courts have not considered a wrongful discharge claim based on workplace drinking or drug use, and it is not this Court's role to define the parameters of state public policy. However, if this Court were to examine this workers' compensation provision, it would likely not interpret it as representative of a general policy against an employee being under the influence of drugs or alcohol in the workplace.

Furthermore, as mentioned above, the plaintiff must allege that "the public policy invoked truly impacts the public in order to justify interference into an employer's business decisions." *Kearl*, 205 P.3d at 499 (internal quotations and citations omitted). Brown makes no such assertions. For example, she does not allege that the nature of Vanderhoof's job responsibilities at Premier had the potential to affect the public interest. There is no evidence that the public would be harmed if Vanderhoof was drunk or high on marijuana during the work day.

I do find it troubling that an employer might terminate an employee for reporting that she has good-faith concerns about an employee's behavior. It would be a shame if the threat of termination prevented an employee from approaching her managers with actual knowledge of a coworker's alcohol and marijuana consumption. With that said, I do not find a sufficiently

---

under *Twombly/Iqbal*. She is required to allege facts that, when taken as true, make it plausible that Vanderhoof did drive under the influence of alcohol or drugs. She fails to meet this standard.

concrete and clearly expressed public policy to support Brown's claim that she was fired for reporting that Vanderhoof was drinking and doing drugs on the job.

For the reasons stated above, I find that Brown's wrongful termination claim fails. Accordingly, defendants' motion to dismiss Brown's first claim is granted.

## ORDER

Defendants' Motion to Dismiss Plaintiff's First Claim for Relief [ECF No. 12] is granted.

DATED this 28th day of March, 2016.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge